IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EARL BOWDEN,

    Petitioner,

v.

BEN CURRY, Warden,

    Respondent.

No. C 08-1201 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, along with exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 1981, petitioner pled guilty to one count of first-degree murder (Pet. at 2). He was sentenced to a term of seven years to life in state prison (*ibid.*). At his 2006 parole hearing, the California Board of Parole Hearings (the "Board") found him suitable for parole (Exh. 1).[1] On August 3, 2006, the Governor of California overturned the Board's decision and denied parole

---

[1] Unless otherwise specified, citations to "Exh." are to the exhibits filed with respondent's answer.

(Exh. 7). The Governor's decision is the subject of this petition. Petitioner has exhausted his claims by way of state habeas petitions.

## ANALYSIS

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and

2

convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.  ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) there was not "some evidence" in the record to support the Governor's reversal of the Board of Parole Hearings' grant of a parole date; (2) petitioner's offense was not "some evidence" to support the Governor's decision; (3) there was no evidence to support the Governor's conclusion that petitioner would be a danger to society if released; and (4) the Governor's reversal of the Board's grant of a parole date was not supported by reliable evidence, because the evidence cited in support of the denial was thirty years old. All of petitioner's issues are variations on a single claim that the Governor's decision violated due process because it was not supported by sufficient evidence of petitioner's unsuitability for parole.

In order to preserve the argument for appeal, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. *See Irons*

*v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

A parole denial satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-456). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In re Lawrence*, 44 Cal. 4th 1181, 1205 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003), the court explained that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Ibid.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on

4

the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *Ibid.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Ibid.* Also, noting that the parole board in *Sass* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Ibid.* (citing *Biggs*, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

The Governor denied parole based on the circumstances of the murder, the assault and other crimes petitioner committed, in the five-year interval between the murder and his arrest, and petitioner's reluctance to discuss the circumstances of the murder in mental-health evaluations conducted prior to his parole hearings (Exh. 7 at 1-2). The Governor commended petitioner on the progress he made during incarceration, in particular his vocational training, his participation in self-help programs, and his parole plans, but found that these positive factors

were outweighed by the evidence of a risk that petitioner would pose a danger if released (*ibid.*). The Los Angeles County Superior Court upheld the Governor's decision, citing the circumstances of the murder, in particular the triviality of its motive, and petitioner's later assault conviction as "some evidence" of parole unsuitability (Exh. 2 at 1-2). The California Court of Appeal also ruled that the parole denial was supported by "some evidence" as required by due process, citing the circumstances of the murder, petitioner's subsequent assault, and evidence in the record that at the 2006 parole hearing petitioner minimized his violent actions in the assault and demonstrated his lack of insight into his past violent behavior (Exh. 4 at 1-2).

As to the commitment offense and petitioner's subsequent crimes, the Governor described them as follows:

> On October 13, 1975, Earl Bowden shot and killed 18-year-old Robert Zeiger after robbing him.
>
> According to the probation report, Mr. Bowden's sister drove him and 16-year-old Steve Brown to a liquor store in Long Beach. Mr. Bowden's sister remained outside while Mr. Bowden and Mr. Brown entered the store and robbed Mr. Zeiger, the on-duty clerk. After taking approximately 40 dollars, Mr. Bowden shot Mr. Zeiger in the upper chest with a 20-gauge shotgun. Mr. Zeiger died as a result.
>
> Mr. Bowden was not arrested until five years later when, while in custody for an unrelated crime, he told another inmate about Mr. Zeiger's murder and the inmate notified police. Mr. Bowden entered into a plea agreement whereby the charged firearm-use enhancement was stricken in exchange fro his no-contest plea to first-degree murder. He was sentenced to seven years to life in prison.
>
> When he perpetrated this crime, Mr. Bowden was 19 years old and had no prior criminal history. During the five-year period before his arrest, however, Mr. Bowden was convicted of petty theft, battery, hit and run, and assault with force likely to cause great bodily injury. According to the probation report for the latter crime, Mr. Bowden put a 60-year-old woman in a chokehold and told her not to fight or scream because he had a gun in his pocket and would kill her. She struggled but he overpowered her, threw her to the ground, and dragged her to a parking lot behind a gas station. When officers arrived, Mr. Bowden was holding the woman down on the pavement; he fled but was apprehended after a brief pursuit. Mr. Bowden discussed this incident at his 2006 parole-consideration hearing, saying, "It was a shoving match . . . I bumped into this here elderly woman. And I grabbed her . . . So when she grabbed me I grabbed her." Such violence, which occurred while on the run for Mr. Zeiger's murder, is a negative factor for purposes of Mr. Bowden's parole suitability at this time.

(Exh. 7 at 1.)

There are a number of factors to be considered here. One of great importance is that

1 petitioner had been in prison for twenty-five years at the time of the Governor's decision and
2 was fifty years old. Another is that it is not disputed is that petitioner's conduct in prison has
3 been exemplary. At the time of the Governor's decision, petitioner had not been disciplined in
4 prison, he had completed vocational programs, a number of work assignments, and self-help
5 therapy, and he had realistic parole plans.

The evidence supporting the denial was, first of all, the facts of the crime. In particular, the evidence indicated that petitioner shot the victim in the chest at close range with a 20-gauge shotgun despite the fact that the victim had already handed over the money, which supported the Governor's conclusion that the murder was both intentional and a "horrible, senseless crime" (*id.* at 2). Petitioner continued to lead a life of violent crime after committing the murder and before he was arrested, as evidenced by his assaulting and threatening to kill an elderly woman. Moreover, this was not a case in which the only evidence supporting the denial of parole were the unchanging factors of the commitment offense and petitioner's criminal history, and therefore the concern expressed in *Biggs*, that after passage of enough time such a factor would cease to amount to "some evidence" on its own, is not triggered. At the parole hearing, petitioner minimized his violent conduct in assaulting the elderly woman, and recent mental-health evaluators noted petitioner's unwillingness to discuss the circumstances of the murder. This evidence suggests that petitioner has not fully come to terms with his conduct even yet.

The issue for the instant federal petition is whether the state courts' rejection of petitioner's due process claim was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. *See* 28 U.S.C. § 2254(d)(1). Whether the Governor's decision was supported by "some evidence" is not a close call when the additional layer of deference in the "unreasonable application" standard is added. Indeed, when the constitutionality of the underlying decision is a close question, it is almost a foregone conclusion that it was reasonable for the state courts to hold that it was not unconstitutional. That is the case here. The state courts' rejection of the this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

//

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January   27  , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\BOWDEN1201.RUL.wpd